MWC:USAO# 2012R00191

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 NOV -4  P 3: 47

CLERK'S OFFICE
AT BALTIMORE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GLR-13-0615 |
| | * | |
| JOHN TADROS, | * | (Conspiracy to Commit Wire Fraud, |
| MOHAMED AL-OMERI, | * | 18 U.S.C. § 1349; Money Laundering, |
| MELISSA PERRY,  and | * | 18 U.S.C. § 1956(a)(1)(B)(i); Forfeiture |
| DEANNA LYNCH, | * | Notice) |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

********

## INFORMATION

### COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The United States Attorney for the District of Maryland charges that:

At all times material to this Information:

1.      John Tadros ("**TADROS**") was the owner of Busy Bees Convenience Mart ("Busy Bees") at 335 South Monroe Street and J & J's Bar and Liquor ("J & J's") at 1801 Ramsay Street in Baltimore, Maryland.

2.      Mohamed Al-Omeri ("**AL-OMERI**") was a storefront manager for **TADROS** at Busy Bees until in or around 2010, at which point **AL-OMERI** left **TADROS's** employ to become the manager of Starlight Liquors ("Starlight") at 2201 Wilkens Avenue in Baltimore, Maryland.

3.      Melissa Perry ("**PERRY**") and Deanna Lynch ("**LYNCH**") were friends and life-long residents of Baltimore City.  Both received welfare benefits and were in possession of welfare

1

benefit cards (hereinafter "benefit cards"), which are debit cards to which the government can distribute financial allotments for food and hygiene products on a monthly basis.

## THE CHARGE

4.      From in and around January 2009 through in and around February 2013, in the State and District of Maryland, the Defendants,

**JOHN TADROS,**
**MOHAMED AL-OMERI,**
**MELISSA PERRY,** and
**DEANNA LYNCH,**

did unlawfully, knowingly and willfully conspire and agree with each other and with others known and unknown to the United States Attorney for the District of Maryland, to commit offenses against the United States, that is: to devise a scheme and artifice to defraud retail stores and to obtain money and property of retail stores through materially false and fraudulent statements and representations, to be executed through the use of interstate wire transfers, in violation of 18 U.S.C. § 1343.

### Purpose of the Conspiracy and Scheme to Defraud

5.      The primary purpose of the conspiracy and scheme to defraud was to obtain money and store credits through the theft and fraudulent return of merchandise at more than fifty retail stores throughout Maryland, Virginia, Pennsylvania, and Delaware.  These retail store victims include the Home Depot, Lowe's Home Improvement, Sears, Kohl's, Dick's Sporting Goods, Lord and Taylor, Wal-Mart, Boscovs, Macy's, Bass Pro Shops, Advanced Auto Parts, PetSmart, TJ Maxx, Marshalls and J.C. Penney (hereinafter, collectively referred to as "retail stores").

2

Manner and Means of the Conspiracy and the Scheme and Artifice to Defraud

It was part of the conspiracy and the scheme and artifice to defraud that:

6.        **LYNCH, PERRY**, and others, stole merchandise by, among other methods, concealing items in pockets and purses or by concealing small items within larger merchandise. **LYNCH, PERRY**, and others, in turn, returned to the same store or visited another location of the same retail chain and returned the stolen items in exchange for store credit, which was extended by the stores on gift cards bearing the logo of the issuing retail store.

7.        The non-receipt returns caused notification of the transaction to be transmitted from the retail store in Maryland, Virginia, Pennsylvania or Delaware to the corporate headquarters of the retail stores outside of these four states.

8.        **LYNCH, PERRY** and others, presented modified Maryland driver's licenses to avoid reporting their own driver's license number to the corporate headquarters.

9.        **LYNCH, PERRY**, and others, approached **TADROS** at Busy Bees, J & J's, and later during the conspiracy, **AL-OMERI** at Starlight Liquors, to sell the fraudulently-obtained gift cards for 50% of the value contained on the cards.  If **TADROS** was present, **TADROS** purchased the cards from **LYNCH** and **PERRY**.  If, however, **TADROS** was not present or was otherwise occupied, **TADROS** instructed his employees, including **AL-OMERI**, to purchase the cards on his behalf.

10.        After **AL-OMERI** became the manager of Starlight Liquors, he sometimes purchased fraudulently-obtained gift cards directly from **LYNCH, PERRY**, and others, for his personal use.

3

11.     **TADROS** and **AL-OMERI** called the respective retail stores or looked online to verify the card balances, calculated the purchase price, and paid 50% of the value of the gift cards in cash to **LYNCH** and **PERRY**. **TADROS** also directed **LYNCH, PERRY,** and others, to target specific stores at specific locations. Further, **TADROS** advised **LYNCH** and **PERRY** the best days to steal merchandise and to modify their driver's licenses.

12.     **TADROS** maintained records of his fraudulent transactions with **LYNCH, PERRY,** and others. **TADROS** and **AL-OMERI** used the gift cards to purchase personal home goods and to purchase supplies and maintenance items, such as tools and cleaning supplies, for various businesses and rental properties. **AL-OMERI** and **TADROS** also shared fraudulently-obtained cards with their associates.

13.     **TADROS** collected the benefit cards of **LYNCH** and **PERRY**, which he held as collateral if he deemed that they "owed" him money for the prior purchase of gift cards where the store expunged the credit on the card before remittance. **TADROS** returned the benefit cards to **PERRY** and **LYNCH** in exchange for 50% of the value of the money debited by the government to the benefit card.

14.     Each non-receipt return and attempted return to the Home Depot caused a transmission from the retail store in Maryland to the Home Depot's host servers located in Austin, Texas and Atlanta, Georgia. A transmission was then sent to a third party, known as "the Retail Equation," based in Irvine, California, where the license number was checked against a database for authorization. An electronic transmission was then sent from California to the Home Depot's host servers in Texas and Georgia before being transmitted back to the local retail store in Maryland.

4

15.     **TADROS, AL-OMERI, PERRY** and **LYNCH** caused retail stores in Maryland to lose over $400,000.00.

<u>Overt Acts in Furtherance of the Conspiracy</u>

In furtherance of the conspiracy and scheme to defraud and to effect its objects, **TADROS, AL-OMERI, PERRY** and **LYNCH** committed the following overt acts, among others, in the District of Maryland and elsewhere:

16.     On November 1, 2010, at approximately 4:36 PM, **PERRY** returned multiple stolen items totaling $105.75 to the Home Depot in Randallstown, Maryland without any receipts using a Maryland driver's license bearing her name and a modified number.

17.     On November 16, 2010, at approximately 2:22 PM, **PERRY** returned multiple stolen items totaling $134.94 to the Home Depot in Glen Burnie, Maryland without any receipts and presenting a Maryland driver's license bearing her name and a modified number.  In addition, throughout November 2010, PERRY made returns of stolen items on nine separate days totaling over $1,100 to six different Home Depot stores in Baltimore, Anne Arundel, Prince George's, and Harford Counties in Maryland.

18.     On October 9, 2010, at approximately 2:47 PM, **LYNCH** returned multiple stolen items totaling $244.01 to Sears in Annapolis, Maryland without any receipts and presenting a Maryland driver's license bearing a modified name and number.

19.     On October 29, 2010, **LYNCH** returned multiple stolen items that totaled $208.97 to Sears in Cockeysville, Maryland without any receipts and presenting a Maryland driver's license bearing a modified name and number.  In addition, throughout October 2010, **LYNCH** made returns

on eleven separate days totaling over $2,200 to three different Sears stores in Baltimore and Anne Arundel Counties in Maryland.

20.     On June 30, 2011, **PERRY** was apprehended at the Home Depot store on Reisterstown Road in Owings Mills, Maryland for shoplifting.

21.     On October 8, 2011, **PERRY** and **LYNCH** were apprehended at the Home Depot in College Park, Maryland for attempting to shoplift $270.00 worth of merchandise.

22.     On December 18, 2011, **PERRY** was apprehended at the Home Depot in Owings Mills, Maryland with $307.00 in merchandise while **LYNCH** fled from the store.

23.     On August 10, 2011, **TADROS** used 19 stored value gift cards to purchase a lawn tractor from Home Depot in the name Julia Tadros, for $2,499.00. Of the 19 cards remitted, 10 had been issued to **LYNCH** and **PERRY**.   **TADROS** returned the unused tractor approximately two months later to another Home Depot retail location and **TADROS** was issued a single store value gift card for the full purchase amount, which he later remitted for U.S. currency.

24.     On March 29, 2012, at approximately 11:41 AM, **TADROS** used 4 fraudulently-obtained gift cards to purchase 46 items for a total of $589.53 from the Home Depot in Owings Mill, Maryland.

25.     On February 27, 2013, **TADROS's** wife possessed 14 gift cards acquired by **LYNCH, PERRY,** and others, and sold to **TADROS**, including two Lowe's gift cards, three Home Depot gift cards, one Kohl's gift card, two TJ Maxx/Marshalls gift cards, one J.C. Penney gift card, four Lord and Taylor gift cards, and one Dick's Sporting Goods gift card.

26.     On February 27, 2013, **TADROS** constructively possessed 18 gift cards fraudulently obtained by **LYNCH, PERRY** and others, including six Home Depot gift cards, two Petsmart gift

6

cards, two Advanced Autoparts gift cards, one J.C. Penney gift card, two Kmart gift cards, one Walgreens gift card, one Bass Pro Shop gift card, and three Lowe's gift cards.   **TADROS** also constructively possessed 289 receipts from Home Depot and 40 receipts from Lowe's for purchases made with fraudulently obtained gift cards.

27.     On February 27, 2013, **AL-OMERI** possessed three fraudulently-obtained gift cards, including one J.C. Penney gift card and two Home Depot gift cards.

18 U.S.C. § 1349

7

## COUNT TWO
## (Money Laundering)

The United States Attorney for the District of Maryland charges further charges:

1.      The allegations of Count One, Paragraphs 1-3 and Paragraphs 5-27, are incorporated by reference herein.

2.      On or about August 10, 2011, in the District of Maryland, the defendant,

## JOHN TADROS,

conducted a financial transaction involving the proceeds of unlawful activity, to wit: the defendant redeemed 19 store value gift cards thereby causing funds to move via wire from the site of the return to the general bank account of the Home Depot corporation, knowing that the property involved represented the proceeds of some form of unlawful activity, namely the return of stolen merchandise in exchange for store value gift cards, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the unlawful activity.

18 U.S.C. § 1956(a)(1)(B)(i)

## FORFEITURE

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 28, U.S.C. § 2461(c), in the event of the defendants' conviction under Counts One and Two of this Information.

2. As a result of the offenses set forth in Counts One and Two, the defendants, **JOHN TADROS, MELISSA PERRY** and **DEANNA LYNCH,** shall forfeit to the United States any and all property constituting, or derived from, or traceable to such violations, and all interest and proceeds traceable thereto, to include $401,326.00.

## SUBSTITUTE ASSETS

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, U.S.C. § 853(p) to seek forfeiture of any property of the named defendants up to the value of any property described in sub-paragraphs (a) above.

28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7); 21 U.S.C. § 853(p)

_Rod J. Rosenstein by MWC_

Rod J. Rosenstein
United States Attorney, District of Maryland